IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JO ANN MACRINA,<br><br>      Defendant. | CASE NO. 1:20-cr-00216-SCJ-LTW |

# FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL

This matter is before the Court on two motions filed by Defendant: a Motion for Production of Rough Notes ([Doc. 47]) and a Motion for Production of Brady[1] materials ([Doc. 49]). For the following reasons, the undersigned **RECOMMENDS** that the Motions be **DENIED**.

## BACKGROUND

Taking the facts in the light most favorable to Defendant,[2] she was the director of Atlanta's Department of Watershed Management from December 2011 until she was

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

[2] The Government states that it "disagrees" with some unspecified portion of Defendant's version of events. [Doc. 52 at 2 n.1]. But contrary to Defendant's suggestion, this does not mean a hearing is needed. Even accepting Defendant's version of the facts, her motions fail, as discussed below.

fired on May 20, 2016.  The day after she was fired, Defendant contacted the Federal Bureau of Investigation ("FBI") and offered to provide information concerning public corruption in the City of Atlanta ("COA").  Defendant met with FBI agents and various Assistant United States Attorneys a total of 28 times.

On February 21, 2019, agents and met with Defendant before the Government obtained an indictment against Lohrasb ("Jeff") Jafari.  According to Defendant, at that time the Government believed she had been truthful and helpful during the investigation.  According to the Government, during the February 21, 2019 meeting Defendant admitted to accepting money from Jafari.  On March 4, 2019, FBI agents again met with Defendant, contending they had asked Defendant whether she had accepted anything of value from any contractor having business with the COA prior to the February 21, 2019 meeting.  However, the written reports of Defendant's prior meetings with the agents do not note her being asked any such questions.

On June 16, 2020, Defendant was charged with three counts: (1) conspiring to commit bribery, (2) accepting bribes from Jafari, and (3) aiding and abetting the preparation of a false tax return by not reporting $30,000 in income she received from Jafari and/or his company after she was fired from the COA. [Doc. 1].  According to Defendant, the activities at issue occurred "after [she] stopped working at COA," and

2

she "forgot to include" the $30,000 in income from Jafari on her tax return. See [Doc. 49 at 4 n.2]; see also [id. at 5 n.4].

## LEGAL ANALYSIS

In the Motions, Defendant asks for essentially the same information in two ways. First, Defendant asks "that the prosecution produce all notes related to her many interviews." [Doc. 47 at 5]. Second, Defendant "asks that the Court direct that the Government provide all reports and other Government materials related to [her] cooperation up until the February 19, 2019 meeting described above." [Doc. 49 at 7]. Defendant bases the first motion on both Fed. R. Crim. P. 16 and Brady, while the second is based exclusively on Brady. [Doc. 47 at 6–7]; [Doc. 49 at 6–8].

Rule 16(a)(1)(E), requires the Government to produce documents and other tangible items that are "material to preparing the defense." Evidence is material under this rule if it will "enable[ ] the defendant to significantly alter the quantum of proof in his favor." United States v. Jordan, 316 F.3d 1215, 1251 (11th Cir. 2003) (alteration in original) (quoting United States v. Buckley, 586 F.2d 498, 506 (5th Cir.1978)). Under Brady, the Government must disclose "evidence favorable to an accused" that "is material either to guilt or punishment." 373 U.S. at 87. However, Brady does not "create a broad, constitutionally required right of discovery" and does not require

3

disclosure of "evidence favorable to the accused, no matter how insignificant." United States v. Bagley, 473 U.S. 667, 675 n.7 (1985); see also Kyles v. Whitley, 514 U.S. 419, 437 (1995) (holding that "showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a Brady violation, without more").

Brady only requires the disclosure of "material" evidence, which means "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682; see also United States v. Agurs, 427 U.S. 97, 109–10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles, 514 U.S. at 434. This requires a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435.

4

As the Government correctly notes, "where a defendant makes only a general request for exculpatory material under Brady . . . it is the [Government] that decides which information must be disclosed." Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987). Defendant asserts "she has made specific requests of specific material," but that is not so. See [Doc. 57 at 6]. Defendant requests "any statements made by any government agent or official to the grand jury considering the indictment against Mr. Jafari." [Id. at 5].[3] Defendant requests "all reports and other Government materials related to [her] cooperation up until the February 19, 2019 meeting." [Doc. 49 at 7]. That includes "any report, statement, email, text message or other communication developed by or presented to the [FBI] agents . . . if the material discusses the quality and accuracy of the information that Defendant provided to the Government." [Doc. 57 at 4]. And while Defendant backs away in her reply brief, her initial Brady motion also requested "any assessments by *anyone on the prosecution team* concerning the

---

[3] Defendant's request for grand jury materials faces an additional hurdle because disclosure of matters occurring before the grand jury is generally prohibited. Fed. R. Crim. P. 6(e); Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 218-19 (1979) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."). Defendant must show "a compelling and particularized need" for disclosure of grand jury materials, which she clearly does not. United States v. Aisenberg, 358 F.3d 1327, 1349 (11th Cir. 2004); see also [Doc. 57 at 5].

5

truthfulness, usefulness and completeness of [her] cooperation until February 19, 2019." [Id.] (emphasis added).[4]

In support of these requests, Defendant offers nothing but her speculation that somewhere in some record someone probably "discuss[ed] the quality and accuracy of Defendant's information." See [Doc. 57 at 4–5]. But Brady is not a vehicle for Defendant to go on a fishing expedition through "any report, statement, email, text message or other communication developed by or presented to the [FBI] agents" as well as "any statements made by any government agent or official." See [Id.]. In the face of such a generalized request, the Government "decides which information must be disclosed." Ritchie, 480 U.S. at 59. The Government knows its obligations under Brady—and the Due Process Protections Act—and it must comply with them.

An even bigger flaw with Defendant's argument is that the information she seeks is not "material" in a constitutional sense. See Agurs, 427 U.S. at 109–10. For the purposes of the present Motions, the Court can assume that someone said they thought Defendant's statements were truthful and complete "until February 19, 2019." See

---

[4] As the Government correctly notes, Brady does not require prosecutors to disclose their opinion work product. Williamson v. Moore, 221 F.3d 1177, 1182 (11th Cir. 2000).

[Doc. 49 at 7]. That information is not "material" because whether agents thought Defendant had been truthful *up until* February 19, 2019, is tangential at best. According to Defendant herself, "no federal agent or prosecutor ever asked" whether Defendant had received items of value from Jafari—or if all her income tax returns were complete—until *after* February 19, 2019. [Id. at 5].

In Defendant's own words, "everything changed" at that point because she allegedly admitted to receiving unreported income and/or other items of value from Jafari. See [id.]. Defendant is charged with allegedly receiving items of value from Jafari as part of a bribery conspiracy and with intentionally failing to report income she received from Jafari. [Doc. 1]. Evidence relating to Defendant's conversations with agents *prior to* February 19, 2019, are not relevant to the charges because, according to Defendant, the circumstances giving rise to the charges were never discussed before February 19, 2019. See [Doc. 49 at 5]. The fact that agents might have thought Defendant was truthful when they were discussing other matters that had nothing to do with Defendant allegedly receiving bribes from Jafari would not "put the whole case in such a different light as to undermine confidence in the verdict." Kyles, 514 U.S. at 435.

Additionally, Defendant is already in possession of recordings demonstrating that the Government believed she was truthful and helpful prior to February 19, 2019. See [Doc. 49 at 3]. As such, other statements to that same effect are not material within the meaning of Brady because they "only would [provide] cumulative impeachment evidence." See Baxter v. Thomas, 45 F.3d 1501, 1507 (11th Cir. 1995). Defense counsel is aware that agents believed Defendant was truthful prior to February 19, 2019, and those agents will be available "to answer any questions" regarding the issue. See id. But the agents' musings about whether Defendant was truthful prior to February 19, 2019, are not "material" within the meaning of Brady. Defendant's statements during those interviews had nothing to do with her allegedly receiving money from Jafari, and she appears to already have all the information she needs to cross examine the agents about their prior beliefs.

Defendant's other motion makes a somewhat more specific request for "all rough notes and other material prepared by any FBI agent, AUSA, or other representative who participated in any of [her] first 25 [interviews]." [Doc. 47 at 1–2]. As mentioned above, during the March 4, 2019 meeting FBI agents contended they had previously asked Defendant whether she ever accepted anything of value from a contractor who had business with the COA. [Id. at 4]. However, the written "302" reports "that outline

Defendant's first 25 meetings with the FBI" do not contain any such questions. [Id.]. Defendant wants "the rough notes" of those prior meetings to the extent they "match up with the written 302 reports." [Id. at 2]. Although Defendant asserts that she "is clearly entitled to the rough notes pursuant to Brady," that is not so. See [id. at 7].

As noted above, documents that "only would [provide] cumulative impeachment evidence" are not material within the meaning of Brady. See Baxter, 45 F.3d at 1507. In reply, Defendant tries to argue the notes "would not simply be cumulative" because they would "prevent the agents from trying to claim that they had in fact asked questions about accepting things of value." [Doc. 56 at 8]. But Defendant already has written documentation she can use to "prevent the agents from trying to claim that they had in fact asked questions about accepting things of value"—she has the 302 reports. Defendant's motion simply asks for additional notes that "match up with the written 302 reports," which is the definition of cumulative evidence. See [Doc. 47 at 2].

The biggest obstacle between Defendant and the rough notes is the binding authority of Jordan. Defendant notes that Jordan is in "conflict" with the decisions of some district courts outside of this Circuit, but Jordan is binding and those cases are not. See [Doc. 47 at 6–7]. Defendant argues Jordan delt with "notes when agents were talking with prosecution witnesses" while the notes in this case "concern interviews

with the Defendant herself," but she cites no authority indicating that distinction makes any difference to the outcome. See [id. at 7]. In reply, Defendant tries to rely on United States v. Harrison, No. 1:06-CR-311-ODE-AJB, 2007 WL 9747384 (N.D. Ga. Feb. 27, 2007), *report and recommendation adopted*, 2007 WL 9747382 (N.D. Ga. May 2, 2007), but that case hurts her position.

In Harrison, Judge Baverman required the government to produce rough notes for *in camera* inspection but stated that the notes would only be produced if they were "inconsistent or contain Brady material." 2007 WL 9747384 at *10; see also id. ("If the Court's review uncovers no inconsistencies or other issues, then the government will not be required to produce the notes to Defendant."). What Defendant is requesting is the exact opposite—she wants any rough notes that "match up with the written 302 reports." See [Doc. 47 at 2].

As discussed above, that evidence is not Brady material because it is simply cumulative of evidence already in Defendant's possession. And as Harrison notes, Rule 16 generally "does not require the government to produce an agent's rough notes because such a requirement could be unduly burdensome." 2007 WL 9747384 at *10. Defendant wants notes that "match up with the written 302 reports" ([Doc. 47 at 2]), but if the 302 reports "identify all of the information contained in the agent's interview

10

notes," there is no basis for production of the rough notes themselves.  See Harrison, 2007 WL 9747384 at *10.  That is to say, redundant notes that say the same things contained in the 302 reports are not "material" within the meaning of Rule 16 because they would not "significantly alter the quantum of proof in [Defendant's] favor."  Jordan, 316 F.3d at 1251.

Defendant argues that production of the "notes would prevent the testifying agents from using their notes as a way of trying to explain why their written reports contain no mention of earlier questions to [Defendant] concerning accepting things of value," but this assertion is pure speculation.  See [Doc. 56 at 8].  Quite obviously, the Government does not argue the agents' rough notes are inconsistent with the written 302 reports.  See [Doc. 52].  If the agents did indeed try testifying that their rough notes contain notations that are inconsistent with the written 302 reports, that might well warrant disclosure of those rough notes.  See Harrison, 2007 WL 9747384 at *10.  But that has not happened at this time, and Defendant herself is not asking for rough notes that are *inconsistent* with the 302 reports.  Again, Defendant is asking for rough notes that "match up with the written 302 reports," and for the reasons discussed above that material does not need to be produced under either Rule 16 or Brady.  See [Doc. 47 at 2].

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion for Production of Rough Notes ([Doc. 47]) and her Motion for Production of <u>Brady</u> materials ([Doc. 49]) be **DENIED**. There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case. **IT IS FURTHER ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**SO ORDERED, REPORTED, AND RECOMMENDED**, this  26  day of October, 2021.

_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE