IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

JO ANN MACRINA

Criminal Action No.

1:20-CR-0216-SCJ

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by Ryan Buchanan, United States Attorney for the Northern District of Georgia, Nathan P. Kitchens, Assistant United States Attorney, and Jolee Porter, Trial Attorney from the U.S. Department of Justice, Public Integrity Section, files its Sentencing Memorandum in the case against defendant Jo Ann Macrina.

### INTRODUCTION

On June 16, 2020, a federal grand jury sitting in the Northern District of Georgia returned a superseding indictment against Jo Ann Macrina ("Macrina"), charging her with conspiracy to commit bribery, in violation of 18 U.S.C. § 371 (Count 1) and bribery, in violation of 18 U.S.C. § 666 (Count 2).[1] [Doc. 1]. On October 14, 2022, a jury found Macrina guilty of both counts. [Doc. 127].

On February 16, 2023, the U.S. Probation Office issued its final Presentence Investigation Report ("PSR") for Macrina. As to Counts 1 and 2, Probation

---

[1] The grand jury also charged Macrina with filing a false tax return, in violation of 26 U.S.C. § 7206 (Count 3). That count, however, was dismissed before trial. [Doc. 107].

calculated Macrina's base offense level to be 14 under U.S.S.G. § 2X1.1 and then applied the following Guideline adjustments:

1. A 2-level enhancement for the offense involving more than one bribe under U.S.S.G. § 2C1.1(b)(1);

2. A 6-level enhancement for the offense involving bribes valued at more than $40,000, but less than $95,000 under U.S.S.G. § 2C1.1(b)(2) and 2B1.1(b)(1)(D); and

3. A 4-level enhancement for the offense involving a public official in high-level decision-making or sensitive position under U.S.S.G. § 2C1.1(b)(3).

(PSR at ¶¶ 41-45.) Accordingly, Probation calculated Macrina's adjusted and total offense level for Counts 1 and 2 to be 26, (*Id.* at ¶¶ 49-52), and determined the resulting custodial Guidelines range to be 63 to 78 months. (*Id.* at p. 21.) Macrina has objected to the following enhancements:

1. The 2-level enhancement for the offense involving more than one bribe (*Id.* at ¶ 43);

2. The 6-level enhancement for the total value of the payment or benefit received from the bribes (*Id.* at ¶ 44).

## ANALYSIS

Under the Sentencing Guidelines, the "bribery offense level is calculated using the greater of the value of the bribe payment or the benefit received in return." *United States v. McNair*, 605 F.3d 1152, 1229 (11th Cir. 2010). Specifically, U.S.S.G. § 2C1.1(b)(2) states, in relevant part, that if "the value of the payment" or "the benefit received … whichever is greatest, exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount." *See United States v. DeVegter*, 439 F.3d 1299, 1303-

2

04 (11th Cir. 2006) ("Assuming the bribe achieves its intended result, the benefit would usually exceed the bribe" amount).

The United States bears the burden of establishing the bribe or loss amount by a preponderance of the evidence; however, the "guidelines do not require a precise determination of loss, and a court 'need only make a reasonable estimate of the loss, given the available information.'" *United States v. Moran*, 778 F.3d 942, 973 (11th Cir. 2015); *see United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999).

### 1. Loss Amount

Probation correctly calculated the "value of the payment" as exceeding $40,000 based on the substantial evidence presented at trial establishing that Jafari paid Macrina multiple bribes totaling over $40,000.  (PSR at ¶ 44.)

First, Jafari paid Macrina $10,000 on or about April 15, 2016 before her trip to the United Arab Emirates (UAE), where she was a speaker at a water conference. (PSR at ¶ 21.) FBI Special Agents Brian Davis and Christy Parker testified that during a February 2019 interview with the FBI, Macrina admitted that she accepted $10,000 from Jafari. (PSR at ¶ 26.) Bank records corroborate Macrina's admission. (Gov. Ex. 30D at 6.)  Jafari withdrew $10,000 in cash on April 15, 2016, the day before Macrina left for the trip.  (*See id*. and Gov. Ex. 7; PSR at ¶ 21.)

Second, Jafari paid for an April 2016 shopping spree, a diamond ring, and a hotel stay in the UAE for Macrina.  Ferra Sabooni Cummings, Jafari's employee, testified that Jafari sent her to the UAE to take care of Macrina and buy the Commissioner what she wanted.  (PSR at ¶ 21.)  Based on that request, Cummings paid for Macrina's hotel stay for one night in a luxury Dubai resort and bought Macrina a diamond ring, luggage, and fabric items. (*Id*.) Cummings's credit card

statements show April 2016 hotel and jewelry payments in Dubai, UAE: $5,610.48 at Atlantis the Palm Resort and $1,497.58 at Viva Jewels.[2]  (Gov. Exs. 1B and 1C.) Cummings paid for one night of Macrina's stay at the luxury resort, while Cummings stayed there several nights.  Accordingly, the government believes a conservative estimate of Macrina's hotel room is $500, less than 10% of Cummings's overall resort expenses.   Cummings explained that the $1,497.58 charge at Viva Jewels was for the purchase of matching diamond rings for Cummings and Macrina; therefore, the value of the ring provided to Macrina was $748.79.   Cummings testified that in addition to the credit card payments, she spent about $4,000 cash on Macrina in the UAE, including on fabric items and luggage.  The total purchases that Cummings made for Macrina in the UAE at Jafari's behest are as follows:

| Description | Amount |
|---|---|
| Diamond ring | $748.79 |
| Hotel stay | $500 |
| Cash purchases | $4,000 |
| **Total** | **$5,248.79** |

Third, Joe Vollero, a landscaper, testified that Jafari paid him around $1,000 cash to do landscaping for Macrina.[3]

---

[2] Cummings testified that she also bought jewelry for Jafari's wife, which is reflected in a separate $7,484.34 charge on the same day.

[3] Vollero also testified that Macrina separately asked him to do other projects at her house, and she paid him via check for that work.  (*See* Def. Ex. 140.)

Fourth, the evidence showed that while Macrina was with the City of Atlanta, Jafari promised Macrina a lucrative job with his company, PRAD. Franklin Allen Barnes and Kim Ajy testified that Jafari offered Macrina a job with PRAD during this period. (PSR at ¶ 31.) FBI Special Agents Davis and Parker testified that Macrina admitted that while she was employed by the City of Atlanta, Jafari offered her a position to take over PRAD. (PSR at ¶ 27.) In line with Jafari's promises of employment, within weeks of her departure from the City of Atlanta, Jafari paid Macrina $30,000 as follows:

| Date | Amount | Method |
|---|---|---|
| June 23, 2016 | $7,500 | Cashier's Check |
| July 22, 2016 | $7,500 | Cashier's Check |
| Aug. 19, 2016 | $7,500 | Check |
| Sept. 22, 2016 | $7,500 | Check |

(Gov. Ex. 4.) While the value of a guaranteed lucrative job could be calculated in various ways, including the potential annual salary, the government is conservatively using only the amount that Jafari actually paid Macrina after her departure from the City of Atlanta to calculate the value of the promised job.

Macrina argues that she "properly earned the $30,000" from PRAD. (PSR ¶ 23.) But the jury was instructed as to the "bona fide salary" safe harbor under 18 U.S.C. § 666(c): "The defendant must not be convicted with respect to these counts if you find that her receipt of money constituted bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." [Doc. 124 at 24]. The jury rejected Macrina's argument that her

acceptance of $30,000 from Jafari consisted of "bona fide salary" and convicted Macrina on Counts 1 and 2. [Doc. 127].  Moreover, no evidence presented at trial showed Macrina doing any work as an employee of PRAD in June 2016 when she was paid $7,500. The earliest email admitted into evidence showing Macrina doing work for PRAD was a July 22, 2016 email from Jafari to Macrina asking her to "review the job description below" for a tunnel engineer solicitation.[4]  (Def. Ex. 50.)  The evidence presented at trial indicates that Macrina did no work to earn the June payment and negligible work before receiving $22,500 in payments from Jafari in the next three months.  Bank records instead demonstrate that as Jafari received payments from the City of Atlanta, he gave a cut of that money to Macrina via cashier's checks in June and July 2016.  (*See* Gov. Exs. 4, 46.)

Accordingly, under the "value of the payment" method, a conservative calculation of the total bribe amount is as follows:

| Description | Amount |
|---|---|
| Cash | $10,000 |
| UAE Spending | $5,248.79 |
| Landscaping | $1,000 |
| Promise of employment | $30,000 |
| **Total** | **$46,249** |

---

[4] As part of reciprocal discovery, defendant provided an earlier email dated July 21, 2016 where Jafari asked Macrina to review a resume.

Although Macrina contests any enhancement for the value of the bribes, this calculation likely substantially understates the harm caused by Macrina's acceptance of bribes because of the lucrative work PRAD received as a result of her corruption. The evidence at trial established that Macrina took multiple inexplicable steps to steer the selection of Jafari's joint venture, JP2, as a vendor for the lucrative FC-7383 contract for Architectural, Engineering, and Design ("A&E") Services, including: (1) requesting an interview process and thereby casting aside the final evaluation scores, even though the original evaluation committee did not request clarification or interviews before ranking JP2 near the bottom of all proponents (PSR ¶ 15); (2) replacing two of the original evaluators with herself and her hand-picked employee, Jay Ash, for the new evaluation (*id.*); (3) pressing an expert at River 2 Tap, which was competing for the same contract in a rival bid, to assist JP2 with its interview to lend JP2 credibility (*id.* ¶ 17); and (4) scoring JP2 higher than all other evaluators during the new evaluation. (Gov. Ex. 129.) After obtaining the FC-7383 contract, JP2 was awarded City of Atlanta task orders worth $26,795,395 as of March 2017,[5] a massive sum that dwarfed the task orders awarded to other FC-7383 vendors. (Gov. Ex. 151.) In addition to the FC-7383 task orders, evidence at trial established that Macrina steered to JP2 a single-source $4.3 million task order under the original A&E contract for the Peyton Center project, including an unrelated water reusability study that was never completed. (PSR ¶ 18; Gov. Ex. 136.) In total, JP2 benefited with more than $31 million in awards from

---

[5] This sum includes the more than $11 million task order issued to JP2 for a Mims Park project at Macrina's direction. (PSR ¶ 20.)

the City of Atlanta on the FC-7383 and Peyton Center task orders after Macrina took indefensible steps to favor Jafari's company over other vendors.

Under the "benefit received" method for calculating the loss in bribery cases, courts consider the "net value," or profit, obtained as a result of the bribe payment. USSG § 2C1.1, App. N.3. As noted in the PSR, the government does not have a calculation of Jafari's profits from the $31 million in City of Atlanta work facilitated, in part, by Macrina's corruption. (PSR ¶ 44.) Accordingly, the government submits that the "value of the payment" method should be applied to calculate the loss enhancement in this case instead of the "benefit received" method.

But the evidence of JP2's potential profits suggests that a loss amount of between $40,000 and $95,000 is extremely conservative. For the "benefit received" by Jafari to be less than $40,000 in profits, JP2 would have had to earn a profit margin of roughly 0.12% on $31 million of City of Atlanta work. It is implausible that JP2 or any contractor would have earned only a fraction of a percent in profit for City of Atlanta work that attracted multiple competitive bids. Indeed, one of JP2's subcontractors, Kimberly Ajy, testified that JP2 charged a 12% markup to the City of Atlanta for its work, which is corroborated by her text messages with Macrina. (Gov. Ex. 24.)

Based on the preponderance of the evidence standard, Macrina should be held accountable for accepting more than $40,000 but less than $95,000 in bribes under U.S.S.G. § 2C1.1(b)(2) and 2B1.1(b)(1)(D).  (PSR ¶ 44.)

### 2. More than One Bribe

Finally, the same evidence establishes that Macrina should be held accountable for more than one bribe under U.S.S.G. § 2C1.1(b)(1) as recommended by Probation. (PSR ¶ 43.) Macrina accepted bribes both directly from Jafari and indirectly from his employee, Cummings. She accepted bribes in the form of cashier's checks, checks, cash, luxury items, landscaping services, and the promise of future employment. And she accepted these bribes in return for assisting Jafari in multiple contracts and task orders, including the award of the Peyton Center design task order, the FC-7383 contract, and the Mims Park task order. In short, Macrina accepted multiple, varied bribes from at least two payees and repeatedly used her position to influence multiple contracting actions to benefit Jafari over an extended period of time.

CONCLUSION

For the foregoing reasons, the Court should accept Probation's position and apply the enhancements contained in the PSR.

9

Respectfully submitted,

RYAN K. BUCHANAN
    *United States Attorney*


/s/ NATHAN KITCHENS
*Assistant United States Attorney*
Georgia Bar No. 263930

COREY R. AMUNDSON
    *Chief, Public Integrity Section*
    *U.S. Department of Justice*


/s/ JOLEE PORTER
    *Trial Attorney, Public Integrity Section*
    *U.S. Department of Justice*
Georgia Bar No. 462455

## CERTIFICATE OF SERVICE

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Dated:  February 17, 2023

/s/ JOLEE PORTER
*Trial Attorney*